IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

PAUL OVERSTREET,

    Plaintiff,

v.                                                                                   Civ. No. 08-810 RLP/RHS

KENNETH SALAZAR, SECRETARY
of the DEPARTMENT OF THE
INTERIOR, *et al.*,

    Defendants.

## MEMORANDUM OPINION AND ORDER

Plaintiff Paul Overstreet appeals his termination from employment from the Department of the Interior (the Department), Office of the Special Trustee for American Indians (OST or the Agency). He asks that the Final Order of the Merit System Protection Board (MSPB or Board) be reversed as not in accordance with the law. For the reasons set forth below, the Court finds that the determination of the MSPB should be reversed.

"Except in 'mixed cases,' the Federal Circuit Court of Appeals retains exclusive jurisdiction over petitions for review of MSPB decisions. . . . 'Mixed cases' are those in which the employee alleges both discrimination and non-discrimination claims." *Small v. Astrue*, 2009 WL 2134345 (D. Colo. 2009) (citations omitted). Mr. Overstreet brings his action pursuant to 29 U.S.C. § 791 *et seq.*; 42 U.S.C. § 2000e-16; and 5 U.S.C. §§ 7701-7703, alleging both wrongful termination and discrimination and this Court therefore has jurisdiction.

Mr. Overstreet alleges that the Agency did not follow the applicable rules and regulations when it recommended his termination and that the decision to terminate him

was not supported by substantial evidence. Specifically, he argues that the Agency failed to prove the required nexus between Mr. Overstreet's off-duty conduct and the "efficiency of the service." The Court has stayed discovery on the discrimination portion of Mr. Overstreet's claims pending resolution of the termination claim.

**Background**

Mr. Overstreet has worked for the OST and its predecessor, the Bureau of Indian Affairs (BIA) for 14 years. The OST is responsible for overseeing Indian trust funds and Mr. Overstreet, an accountant, has a position of public trust within the OST. Testimony of Margaret Williams at pp. 57-58. During his career, Mr. Overstreet received numerous commendations for the high quality of his performance, work, and dedication. *See* Volume 1 Exhibits A-W.

Prior to his promotion to accountant in June, 2000, Mr. Overstreet had five off-duty DWI arrests (1989, 1990, 1992, 1993, 1997). In connection with this promotion, he neglected to identify the 1997 arrest and told the investigator he had quit drinking. In 2004, however, Mr. Overstreet had a sixth DWI arrest. He underwent treatment, but in 2005 started drinking and was again arrested. The FBI notified the Office of Personnel Management and Linda Wood, a personnel security specialist with the OST, undertook a suitability investigation.

All OST employees undergo "suitability" investigations every 10 years, but high risk employees, those who hold positions of fiduciary responsibility such as Mr. Overstreet, receive these investigations every five years. Linda Wood, Vol. 4,13:4-14. His supervisors were aware of his previous arrests and had expressed no concern about them. These arrests or incidents had never been an issue in prior suitability investigations. *Id.* at 48-49.

Indeed, all during the time Mr. Overstreet was apparently drinking he received numerous commendations about the quality of his work.  *See* Volume 1 Exhibits A-W.

**The Hearing**

After his termination Mr. Overstreet appealed and a hearing was held on February 22, 2007 before an Administrative Judge (AJ).  Ms. Wood testified that she used the criteria in 5 C.F.R. § 731[1] to make her suitability determination.  Wood, Vol. 4, 16:19-25.  She stated that job performance was not considered because suitability and qualifications are not the same thing.  *Id.* 18:7-14.  Ms. Wood further testified that she only looked at alcohol abuse, not criminal conduct, in making her determination.  *Id.* at 51.  She determined that Mr. Overstreet needed 24 months of sobriety, which he did not have at the time of the suitability determination.  She did not consider the actual impact alcohol had on Mr. Overstreet's job performance, she only considered the potential impact.  *Id.* at 47.

Margaret Williams, the Deputy Special Trustee for Trust Accountability, testified there have been several lawsuits since the OST was created in 1994 alleging mismanagement.  She also testified that a BIA employee, Lloyd Larson, had been involved in an alcohol related accident in a government vehicle and she was worried that Mr. Overstreet "might be another Lloyd Larson."  Testimony of Margaret Williams, Vol. 4, 66-68.  Ms. Williams stated that she knew that the Code of Federal Regulations required a nexus between the conduct alleged and the "efficiency of the agency."  *Id.* at 88.  She said

---

[1] Section 731.202 provides that suitability determinations must be made on certain listed factors.  Pertinent to Mr. Overstreet's case is factor (5): "Alcohol abuse, without evidence of substantial rehabilitation, of a nature and duration that suggests that the [employee] would be prevented from performing the duties of the position in question, or would constitute a direct threat to the property or safety of [himself] or others."

3

she was concerned about his off-duty conduct. *Id.* 87:14-17. There were no problems with his work or his conduct at work.

### The AJ's Initial Decision (Vol. 3 of 5)

The AJ went through Mr. Overstreet's work background, his duties, awards, and promotions. She noted that he had six DUI offenses as of 2004 and began drinking again in 2005, but then entered a 28-day inpatient treatment program. *Id.* at 2-8. The criminal charges against him were dismissed and the FBI notified the Agency of Mr. Overstreet's prior arrests. *Id.* at 8-10.

It was at this time, in 2005, that the Agency decided to review Mr. Overstreet's record. He, and all other OST employees had been designated "high risk" since 1999 due to the *Cobell* litigation, which was a series of lawsuits based on mismanagement brought by beneficiaries of trust accounts. *Id.* at 10, n.1. "After consulting with the Human Resources Management Office, [Personnel Security Specialist Linda] Wood issued formal notice dated May 8, 2006, to the appellant that he did not meet the suitability standards for his public trust position." *Id.* at 11. Acting Deputy Special Trustee Charlene Toledo proposed Mr. Overstreet's removal, which was upheld by Deputy Special Trustee Margaret Williams on September 14, 2006.

At the time of this determination, Mr. Overstreet had been sober for over 12 months, but Williams found this period of sobriety, from June 2005 to September 2006, "was insufficient to constitute a clear and lengthy break from his pattern of abuse" and that this period of sobriety was not mitigating. *Id.* at 11. She further stated that

> Williams noted that the agency was under close scrutiny from Congress and the Federal Courts and she concluded that the agency could not risk a potential impact to its goals and

> missions. Further, Williams testified that she considered that the appellant could injure or kill a citizen while driving off-duty or in the performance of his government duties.[2] The record evidence shows that the appellant was required to drive a government-owed vehicle in the performance of his Accountant duties *even though the agency had not required the appellant to meet this element of his position description*.[3] Williams testified that she was aware of, and considered, a highly-publicized case involving an agency employee, Roy (*sic*) Larson, who drove his government vehicle while intoxicated and caused the death of several individuals in Albuquerque, New Mexico.

*Id.* (emphasis added).

Mr. Overstreet presented the testimony of Gerald S. Fredman, M.D., who reviewed Mr. Overstreet's file; interviewed the Plaintiff; and consulted with Mr. Overstreet's AA sponsor. Dr. Fredman testified that since 2005, when Mr. Overstreet accepted responsibility for his alcoholism, he had not had a relapse. It was Dr. Fredman's opinion that it was unlikely that Mr. Overstreet would relapse. *Id.* at 12-13.[4]

**Applicable Law**

A federal court may overturn a decision of the MSPB only when the decision is (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law;

---

[2] The Court has reviewed Ms. Williams testimony and is unable to find any reference to her testimony about Mr. Overstreet's driving a government vehicle.

[3] The only testimony about driving a government vehicle came from Mr. Overstreet. When asked if he had ever ridden in or driven a government vehicle while impaired, he said he had not. *See* Vol. IV, Overstreet testimony at page 132.

[4] Dr. Fredman had previously been a consultant psychiatrist with the Department of Energy in the 1990s. At the time of his testimony, Mr. Overstreet had 20 months of sobriety. Dr. Fredman testified that the period between June, 2005, and September, 2006 (the time of the hearing), constituted a clear and lengthy break in the pattern of abuse, as required in the CFR. Volume V at page 15.

(2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence. *Zazueta v. Department of Justice*, 104 Fed.Appx. 166, \*\*2 (2004 WL 156570) (unpublished decision) (citing 5 U.S.C. § 7703(c)(2000)). An agency must show by a preponderance of the evidence "'the necessary connection between the employee's off duty misconduct and the employee's job-related responsibilities.'" *White v. United States Postal Service*, 768 F.2d 334, 335-36 (Fed. Cir. 1985)).

"An agency may show nexus in one of three ways: (1) a rebuttable presumption of nexus that may arise in certain egregious circumstances based on the nature and gravity of the conduct; (2) a showing by preponderant evidence that the conduct affects the employee's or his co-workers' job performance, or management's trust and confidence in the employee's job performance; or (3) a showing by preponderant evidence that the conduct interferred with or adversely affected the agency's mission." *Id.* at 231-32.

The testimony summarized above indicates that the basis for removal was management's lack of trust and confidence, not in his ability to perform his job, but their lack of trust that Mr. Overstreet would remain sober.

Ms. Williams and Ms. Wood are three levels removed from Mr. Overstreet; there was no testimony from a direct supervisor or co-worker. There is no record evidence that Wood's and Williams' opinions were shared by the personnel who actually supervised and worked with him. There is no record evidence that anyone on his team -- the people who worked most closely with him -- had lost confidence in his ability to perform his job. Indeed, Mr. Overstreet's work history indicates that his prior drinking and the off-duty DWIs had no effect on his ability to do his job or to pass prior suitability determinations. The evidence

6

clearly indicates that while he had access to a Government vehicle, he was not required to drive the vehicle in the performance of his duties.

There is no evidence that the off-duty conduct interfered with or adversely affected the agency's mission. There were many references to the *Covell* litigation (misappropriation of Indian Trust funds) and the Lloyd Larsen incident, both of which no doubt affected the agencies involved, but fear of bad press (as Williams testified) is not the standard for termination. The Court has closely reviewed the record testimony of the individuals appearing at the hearing and finds no evidence of a nexus between the off-duty conduct and Mr. Overstreet's job-related duties.

This case is similar to *Gloster v. GSA*, 720 F.2d 700 (D.C. Cir. 1983), in which the employee was terminated for her conviction of welfare fraud. "The MSPB has held that welfare fraud by a custodial employee raises . . . a presumption of nexus, justifying dismissal." *Id*. at 704 (citing *Gamble v. United States Postal Service*, 6 MSPB 487, 489-90 (1981)). However, the court noted, such a presumption may be rebutted by evidence showing an absence of adverse effect on agency efficiency:

> In the present case whatever force the MSPB's presumption commanded was dispelled by Gloster's contention, and the GSA's confirmation, that her conviction bore no relation to her job performance, and was not notorious so as to discredit the agency or otherwise affect the performance of others. The MSPB did accept the GSA's contention that Gloster occupied a "position of trust," but the GSA disclaimed any reliance on a theory that her offense made her access to untended offices pose a security risk. Rather, the "position of trust" theory seems to posit that past offenses may render one unworthy of government service regardless of the effect, or lack of effect, on the functioning of the agency. This theory, however, is contrary to the theory of the Civil Service Reform Act that disciplinary actions may be taken only in the service of efficiency. The federal government and society in general

7

> certainly do not condone welfare fraud, but punishment for such offense is entrusted by the Act to the criminal process so long as the offense has no work-related effects. Here, the MSPB specifically found that such effects were lacking.

*Id.*

As in *Gloster*, there has been no showing in this case of an adverse effect on the agency. The ALJ's finding of nexus in this case is not supported by substantial evidence. Accordingly, the Court finds that the Final Order of the Merit System Protection Board should be reversed.

IT IS THEREFORE ORDERED that the Final Order of the Merit System Protection Board is reversed.

IT IS SO ORDERED.

_____
Richard L. Puglisi
Chief United States Magistrate Judge